Board of Sup'rs of Covington County *v*. Conner Lbr. Co.

[65 South. 466.]

1. TAXATION. *Assessment. Duty of board of supervisors. Change of valuation. Power of board of supervisors. Code* 1906, *sections* 4293-4298-4307.

It is the duty of the board of supervisors to see that all changes in assessments for taxes are entered on the roll.

2. TAXATION. *Assessment. Changes of valuation. Power of board of supervisors.*

The statute Code 1906, section 4293, fixes the first Monday in July as the time for the filing of the assessment roll made up by the assessor and authorized the board of supervisors to extend the time to the first Monday of August and no longer. Section 4297, Code 1906, requires the supervisors to hold a meeting on the first Monday of August to examine the assessment roll and determine all exceptions thereto and to sit from day to day until the same has been disposed of and all corrections made. Section 4298 provides that, if the assessor be given additional time, the board shall hold its meeting on the first Monday in September. Section 4307 requires the clerk to make two copies of each roll as examined and corrected, one to be transmitted to the auditor of public accounts and the other to the tax collector on or before the first Monday in October. Under these statutes, where the board of supervisors failed to enter at their September meeting an increase in the assessment roll, and time of filing the rolls, having been extended, it cannot in the following October, increase an assessment, since its power being wholly statutory, it could not make a change after the time prescribed by the statutes.

Appeal from the circuit court of Covington county. Hon. W. H. Hughes, Judge.

The board· of supervisors of Covington county raised the valuation upon the land of the Conner Lumber Company, which appealed to the circuit court.  From a judgment of the circuit court, setting aside the order of increase, the board of supervisors appeal.

The facts are fully stated in the opinion of the court.

*E. L. Dent* and *Geo. H. Ethridge,* for appellant.

The board having determined, in a legal manner, to raise the assessment and having evidenced their intention by an entry on the minutes, which is the only proper way for them to express their action as a joint body, the clerical part of changing the roll actually filed by the assessor, would be performed at any time before it was turned over to the sheriff for collection, and while the assessment roll is the sheriff's warrant, it can only be a warrant in law when the roll had been approved by the board of supervisors.  The mere fact of making an assessment by the assessor does not constitute a legal assessment, but under section 4306, of the Code of 1906, the board itself must approve the assessor's roll, and the order of approval must be on the minutes. It might be, that after the roll has been filed with the sheriff and the time for the collection of taxes had expired, that the sheriff would be fully protected and the taxpayer probably also would, where he had paid on the assessment of the roll in the hands of the sheriff without actual knowledge of an action of the board of supervisors.  It is clear to my mind that if the taxpayer, or the sheriff, either, knew that the orders actually entered on the minutes existed, and knew the contents of these orders, that they could not escape liability for taxes on that account.

I think it is perfectly proper and legal for the board, at the subsequent meetings, which were lawful meetings,

to enter any entry necessary *nunc pro tunc,* and such order, when so ordered, would be effective from and after the date of entry.

It appears that the appellee did not appeal from the order of the board of supervisors at the September meeting, which was the judicial act which fixed liability upon him for the extra valuation placed on his property, and having failed to appeal, and it being competent for the board to perform the mere ministerial act of inserting the figures on the assessment roll, he could not maintain his appeal in the present suit, but if mistaken in this, this being an appeal from the board of supervisors assessing his property, the circuit court should have entered the order after hearing the proof as to value of the said lands just as the board should have entered it at the proper time under section 4305.

The clear and manifest purpose of section 4306 is to have the property of the entire county listed at a fair value and on an equal basis according to its value with all other property in the county, and the mere fact that an omission was made, by the inserting of figures on the assessment roll, could not defeat the right of the county to its lawful taxes. It certainly cannot be contended, with any show of reason or justice, that the order of the board, which was entered on the minutes, is an approval of the roll as filed with the auditor, for when you take the recitals of the order, taken as a whole, and in all its parts, and all entries being taken together, it clearly appears that the board did not approve the roll as filed by the assessor.

*Whitfield, McNeil & Whitfield,* for appellee.

The court will see clearly that the sole question presented for the supreme court's decision by this record, is the construction of section 4305 of the Code of 1906. This section is clear and explicit in its provisions, and mandatory and specific in its requirements.

Furthermore, it has already been emphatically and clearly construed by this court in the case of *Yazoo Delta Investment Company* v. *Suddoth*, 12 So. 246, which decision, we submit, sets at rest all controversy as to the proper and only construction of said statute. That case was decided in 1893, and has been acquiesced in ever since, and never has been overruled. On the contrary, the same principle which it announces has been re-announced by other cases since it was decided, and these cases ought to set at rest, for ever, all controversy as to the only proper construction to be placed on section 4305.

A mere reading of said section makes it manifest that it is made the mandatory duty of the board of supervisors, at the meeting for the hearing of objections to assessments, to carefully examine the land roll and cause all corrections, which they properly think should be made, to be made in the roll itself, which, after it had been done, the board shall approve the assessment and adjourn.

Any taxpayer, feeling aggrieved at the valuation of his property appearing on the assessment roll itself, is given the right to appeal to the circuit court within the next five days, and not thereafter. After the expiration of the five days from the adjournment of the meeting of the said board, the taxpayer is concluded from complaining, and, surely after the adjournment of the board, the board and the county ought likewise to be concluded from altering or spoliating or changing the roll in any manner. This is the universal holding of all the decisions construing this statute. The construction of this statute in a similar case was put up to this court in the case of *Yazoo Delta Investment Company* v. *Suddoth*, 12 So. 246.

The court, in this case, squarely held that section 4305 of the Code of 1906, is mandatory in its requirements that the board should cause all corrections to be made

on the roll itself, and said that this intention and pur-
pose and construction of the statute contemplated by
the legislature, was clear from the concluding para-
graph, which the court quoted. We agree with the
court, that the concluding sentence of this paragraph
is so clear as to need no construction. Its meaning
plainly is, that the only way a board of supervisors
can, in the eye of the law, approve an assessment roll,
is to cause the corrections to be made in the roll itself,
and then enter an order in its minutes approving the
roll, from which it must necessarily follow, that after
the board has approved an assessment roll, the citizen
who is bound thereby to pay taxes on whatever valua-
tion his property has on the roll itself, is only required
to go and inspect for himself the roll itself, he surely
is not required to go through all the minutes of the
board of supervisors to see whether they have ordered
corrections to be made, which have not been made; and
only need to know that the board had met for the pur-
pose of equalizing the assessment and adjourned, and
he has a right to rely upon the valuation appearing on
the roll itself and, if he had no objection to said valua-
tion, there is no reason for him to appeal within the
next five days, no reason to concern himself thereafter
about the valuation of his property, because, as he is
concluded at the expiration of five days, so the county
is concluded, from the date of the adjournment of the
board, and the contract, as between the county and the
citizen is closed, and must be enforced as written on the
face of the assessment roll itself.

Not only is this construction, placed on this statute
4305 of the Code of 1906, by the supreme court of this
state, wise, but it is necessary, as pointed out more re-
cently, by the supreme court, speaking through MAYES,
J., in the case of the *City of Biloxi* v. *Biloxi Real Estate
Company*, 48 So. 730.

The court held, on viewing the whole record, that the
real and true assessment was that shown by the assess-

ment roll filed with the clerk and approved by the board
of supervisors at the time and place when they were
required to examine and approve the roll. The statute
itself provided, that the supervisors shall cause all
change to be made in the roll and having done this to
approve the roll. It fixes the time, it fixes the place
when this shall be done, and this court has, over and
over again, decided that this assessment when made, is
conclusive against the taxpayer, and the state and the
taxpayer is only given five days in this particular case
in which to appeal from an order of the supervisors
raising his assessment. If he goes to the clerk's office
and finds his assessment as he gave it in, he has a right
to rely upon the fact and the law that this is his assess-
ment for the ensuing two years. It makes no difference
how badly he may be dissatisfied, if he has waited his
five days and failed to appeal, there is no remedy in the
statute for him, he is concluded by the delay and must
suffer the consequences. The assessment made by the
assessor under the oath and filed with the supervisors
and accepted by them is presumed to be correct, but a
time specified in law, at which the board of supervisors
can give it a critical examination and make such
changes in the roll, may be proper and just. The
taxpayer knows when this time is fixed and is presumed
to be on hand and make timely objection to any raise
made in the rolls that are not proper. There was noth-
ing to appeal from in this record until after the copies
of the roll were completed by the clerk, and the board
convened on the 10th of October and without any au-
thority of law, we contend, changed these important
books. The time for appellant to appeal from an assess-
ment where he felt himself aggrieved was long since
passed. He did have a right to appeal from a void order
of any kind and that is simply what he has done in this
case. If the roll duly sworn to and filed by the assessor,
is approved by the board and that body hadn't judg-

ment or discretion enough to make changes in it at the time and place as provided by law, would it not be entirely proper for a trial court to accept the original assessment as valid.

We respectfully submit that the court committed no error in declaring the true assessment of appellee's property to be as set out in the order.

Cook, J., delivered the opinion of the court.

At the July term, 1911, of the board of supervisors of Covington county, an order was made extending the time for the filing of the assessment roll to the first Monday in August. At the August meeting it was ordered that the assessment roll for the fiscal year 1911 be placed on file for the next thirty days for examination. At the September term the following order was entered upon the minutes of the board:

"It is ordered by the board that the land assessment roll of said county, as filed by S. Barnes, tax assessor, be and the same is hereby approved as corrected, and the clerk of the court is ordered to make copies thereof as provided by law."

It appears that at the September term the board of supervisors raised the valuations fixed by the assessor on appellee's land, and entered upon its minutes an order showing the valuations fixed by the assessor and raised valuations fixed by the board.

The changes in valuation ordered by the board were not entered on the assessment roll, and the clerk, in making copies of the roll for the tax collector and auditor of public accounts, copied the roll as made by the assessor. At the October meeting of the board it was discovered that the changes in the valuations of appellee's lands ordered by the board had not been made on the assessment roll, whereupon the board entered an order citing appellee to appear at an adjourned meeting of the board to be held October 11th, and show cause

why the assessment roll should not be corrected by them, making the changes on the roll, which the board had ordered to be made at the September term. Notice was served on appellee five days before the 11th day of October. On October 11, 1911, the board proceeded to enter upon the assessment roll the changes in the valuations, which it had ordered to be made at its September meeting. From this action an appeal was prosecuted to the circuit court, which court overruled and set aside the order, and the board prosecutes this appeal.

When the board approved the assessment roll, and directed the clerk to make copies thereof, could it thereafter recall the roll and have same changed?

It was of course the duty of the board of supervisors to see that all changes made by it were entered on the roll. If the board failed to perform this duty, could it afterwards do what it should have done in the first instance?

The scheme for the assessment and collection of taxes is purely statutory. The assessor is required to assess all property at it true value, and, after he has done so, his assessment is submitted to the board of supervisors for its approval. The board is empowered to equalize the assessments, and the time when this can be done is fixed by law.

The statute fixes the first Monday in July as the time for the filing of the assessment roll made up by the assessor, but the board of supervisors may extend the time to the first Monday of August, and no longer. Section 4293, Code of 1906. It is true the board may extend the time for the assessment of property and the filing of the assessment roll beyond the first Monday of August, but this extension of time cannot be made where the assessor makes the assessment. Sections 4294 and 4295, Code 1906. The last-named sections are emergency provisions and have no application to the regular assessment contemplated by the statutory scheme.

In the present case the board extended the time for the filing of the assessment roll by the assessor to the first Monday in August, and the power for this extension of time is given to the board by section 4293.

In the regular order of things, it is the duty of the board to hold a meeting on the first Monday of August, and "examine the assessment rolls, and hear and determine all exceptions thereto, and shall sit from day to day until the same shall have been disposed of, and all proper corrections shall have been made." Section 4297, Code 1906. But, if the assessor is given an additional time to file the roll, the meeting to examine, hear exceptions, make corrections, and increase or diminish the valuation of property must be held on the first Monday in September. Section 4298, Code 1906.

By section 4307, Code 1906, the clerk is required to make two fair copies of each roll, "as examined and corrected," one of which he is required to transmit to the auditor of public accounts, and the other he is required to deliver to the tax collector on or before the first Monday in October.

In the present case the rolls were approved by the auditor.

It seems clear that the legislature intended and did fix a time limit for the preparation and final completion of the assessment rolls, and no warrant can be found in the statutes for the theory that the board of supervisors is a court of plenary powers to alter the assessment rolls at any time.

In *Yazoo Delta Investment Co.* v. *Suddoth*, 70 Miss. 416, 12 So. 246, this court used this language:

"Manifestly all changes made by the board must be noted on the roll, for it in its completed form, is the warrant upon which the collector acts in collecting the taxes due, and a copy of the roll filed with the auditor constitutes the charge against the collector for all taxes due to the state."

The statute prescribes the time for the final entries on the books, and commands the board to remain in session from day to day until the books are completed. Obviously, there must be a limit to interferences with the rolls, and, as the law requires the completed roll shall be in the hands of the auditor on or before the first Monday in October, there is no escape from the conclusion that the board must complete its supervisory work before that time. When the board meets to correct, change, and alter the rolls, it must remain on the job until it is completed.

To do the work right, it was the duty of the board to enter on the rolls all changes made by it. If such changes were not noted on the roll, no changes were made, and, the board having adjourned, it no longer possessed the authority to make changes in assessments.

The judgment of the circuit court is affirmed.

*Affirmed.*